COURT OF APPEALS OF VIRGINIA

Present:  Judges Annunziata, Humphreys and Senior Judge Coleman
Argued at Richmond, Virginia


JOHN LLOYD VANN, JR.
                                            OPINION BY
v.   Record No. 2918-99-2          JUDGE ROBERT J. HUMPHREYS
                                          APRIL 17, 2001
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                 James F. D'Alton, Jr., Judge

         Joseph A. Sadighian, Assistant Public
         Defender (Office of the Public Defender, on
         brief), for appellant.

         Michael T. Judge, Assistant Attorney General
         (Mark L. Earley, Attorney General, on brief),
         for appellee.


     John L. Vann, Jr., appeals his conviction, after a bench

trial, of one count of possession of cocaine, one count of

possession of cocaine with intent to distribute as an

accommodation, and one count of possession of cocaine with intent

to distribute as an accommodation, within 1000 feet of a

recreation center.  Vann contends the trial court erred in ruling

that his evidence failed as a matter of law to establish that he

was legally insane at the time of the offense.  Finding no error,

we affirm.

                     I.   Background

     The evidence presented at trial established that Sergeant

E.S. Jones, of the Petersburg Police Department, saw Vann

walking near the street at approximately 1:00 a.m. on June 30, 1998. Jones recognized Vann as a known drug offender and observed Vann reach into his pocket with his right hand, make a "throwing drop-type motion," and begin to "walk." Jones, who was in his squad car at the time, got out of his car and placed Vann in handcuffs. Jones told the other officer who was present with him to watch Vann while he searched for the item Vann dropped. Jones found a metal smoking device of the type he knew to be used for smoking crack cocaine where Vann had been standing when he dropped/threw the item. Jones showed the item to Vann and Vann became angry, started twisting and jumping around, and began screaming "at the top of his lungs." He yelled: "I can't go back. I am not going back to jail. Why are y'all always coming at me? I am not the only one out here doing something wrong. Can't y'all find somebody else to arrest." Jones placed Vann under arrest and placed him in the squad car. After being read his rights, Vann accused local judges of supplying the City of Petersburg with crack cocaine and accused Jones of selling crack cocaine for the judges. He then started kicking the back of Jones' seat, stating: "I'll kill you. I'll get you. I know you. You know me. I'm tired of you arresting me."

Vann was calm by the time he reached the jail. Once there, Jones interviewed him and Vann stated "he didn't know how many

times he had used [the pipe]."  Vann was ultimately charged with possession of cocaine.

Subsequently, while out of jail on bond on October 15, 1998, at approximately 5:15 p.m., Vann was walking alone near Harding Recreation Center, "yelling and screaming," "like talking loud to himself or to someone."  At the same time, Detective E.F. Carpenter and a female were leaving the recreation center after having attended a neighborhood watch meeting.  Carpenter was dressed in plain clothes.  The female recognized Vann and said, "John, what are you making all of that noise for?"  Vann yelled, "Hey baby.  Hey baby, do you want some of this?"  As Vann walked to where the female and Carpenter were standing, the female said, "Unless you have a cigarette, you know, I don't want anything."  Carpenter noticed that Vann had something cupped in his hand.  It was a "plastic bag with white rock-like material and a metal smoking device."  Vann was shoving the smoking device into the plastic bag, putting the white substance into it.

Carpenter motioned to another officer who had just come out of the building from the meeting, and advised Vann that he was placing him under arrest.  Vann clenched both hands together, with the smoking device in one hand and the plastic bag in the other, and raised his arms up yelling, "You're not getting

this." Carpenter had to take Vann "down to the ground" to place him in custody.

Carpenter then took Vann to the jail and advised him of his rights. Vann told Carpenter that he thought Carpenter was trying to steal his drugs. Carpenter testified that Vann seemed to be intoxicated at the time. When he was before the magistrate, Vann would not sit and walked behind Carpenter and tried to kick him.

Vann was charged with possession of cocaine, possession of cocaine with the intent to distribute as an accommodation, and possession of cocaine with intent to distribute as an accommodation, within 1000 feet of a recreation center.

Prior to trial, Vann submitted a Notice of Insanity Defense. At trial, Vann presented the testimony of his expert psychiatrist, Dr. N.A. Emiliani. Dr. Emiliani testified that he had examined Vann on April 29, 1999, and diagnosed him as suffering from "schizo effective disorder bipolar type," "varied personality," and "skin discoloration." In his report, Dr. Emiliani noted that Vann had been hospitalized at Central State Hospital in 1977, 1990, and 1996. He further stated:

> I feel that he is competent to stand trial
> and he can assist and help his lawyer with
> factual information that would benefit his
> defense. He does understand right from
> wrong, however, from time to time he does
> experience irresistable [sic] impulse where
> he becomes extremely suicidal. He is
> currently psychotic and can be tried as not

- 4 -

> guilty by reason of insanity at this point
> in time.  His mental condition at the time
> of the offense is very difficult to
> determine since I had not examined him
> previously but it appears that he has
> suffered since 1986 with a residual type of
> schizophrenia.[1]

However, when asked to give an opinion as to whether Vann was sane at the time of the offense, Dr. Emiliani testified as follows:

> Well, that's one of the difficulties because
> I have never examined him prior [sic] or
> shortly after the offense.  But it appears
> that he's suffering at least at the time of
> the offense from residual schizophrenia
> according to the records and according to
> the multiplicity of admissions and to the
> symptoms, where I cannot completely assert
> that since I didn't examine him.
>
>      *      *      *      *      *      *      *
>
> In terms of psychosis, it's more difficult.
> In terms of addiction, we know that addicts
> are impulse driven people.  Whenever they
> get the craving, they're going to go and use
> drugs.

Upon further questioning by the court, Dr. Emiliani testified that, in his opinion, Vann has an irresistible impulse to "use cocaine."  But when asked, "So his addiction to cocaine makes him insane when he attempts to possess cocaine; is that your opinion?"  Dr. Emiliani replied:

---

[1] The Commonwealth also had Vann examined by an expert.  In that interview, when describing the offense of October 15, 1999, Vann stated that "the bag didn't look like enough for distribution, it looked like possession to me."

No.  That he's going to be impulsive in the using of cocaine, and he most likely was suffering from a residual type of schizophrenia, residual symptoms at the time of the offense.  But since no one can tell us what happened at the time of the offense unless one examined the defendant shortly before or after --

Dr. Emiliani then responded as follows upon redirect questioning:

[MR. SADIGHIAN]:  I guess the Court has kind of narrowed down the issue.  You would not consider this voluntary intoxication because of the residual schizophrenia?  In your opinion, has this affected his impulse control to the point where he may be more driven than another cocaine addict?  Is that --

[DR. EMILIANI]:  Exactly, because you have two impulses -- impulse control, impulse driven disorder -- one on top of the other. So you have two illnesses sort of speak [sic] working together.

At the conclusion of Dr. Emiliani's testimony, the Commonwealth asked the court to find, as a matter of law, that Vann had failed to meet his burden of establishing that he was legally insane at the time of the offense.  The Commonwealth argued that the expert conceded he could not offer an opinion that Vann was insane at the time of the offense.  In response, Vann reiterated Dr. Emiliani's testimony concerning Vann's history of schizophrenia, his uncontrollable impulse to use cocaine as a result of the addiction, and the residual schizophrenia.  Vann contended that this evidence, in

combination with Jones' and Carpenter's testimony as to Vann's "bizarre" behavior at the time of the offenses, was sufficient to meet "the burden in showing that his inability to resist impulse is not just a factor or condition of voluntary intoxication, but is a factor of his mental state itself, schizo effective disorder or residual schizophrenia psychosis."

The court ruled as follows:

> All right. Well, I think from listening to the evidence surrounding these offenses he was very much aware of the difference between possession of cocaine and possession with intent and attempted to rationalize that this --
>
> He has been convicted several times for possession and is clearly attempting to avoid the more serious consequences of the distribution charge and could make that distinction very readily. His actions to try to -- not knowing that this was an officer -- Once he realized he was going to take it away from him, he was very possessive of it.
>
> Your expert -- and I read from his report -- does not give an opinion of his mental state at the time of the offense. He draws a conclusion without foundation.
>
> \*      \*      \*      \*      \*      \*      \*
>
> Then he goes on to say and uses the term likelihood, and he gave no opinion within a reasonable degree of medical certainty that the Court can accept.

The court "sustain[ed] the motion to strike the [in]sanity defense based on the lack of the expert's ability to form an

- 7 -

opinion" as to Vann's sanity at the time of the offense.[2]  Vann was ultimately found guilty of all three charges and sentenced to an active jail term of two years.

## II.  Analysis

"Every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crimes until the contrary is proved to the satisfaction of the [trier of fact]."  Jones v. Commonwealth, 202 Va. 236, 239-40, 117 S.E.2d 67, 70 (1960).  The burden of proving insanity rests on the individual asserting it as a defense.  See Fines v. Kendrick, 219 Va. 1084, 254 S.E.2d 108 (1979).  "When the [c]orpus delicti has been established and proof adduced that the accused committed the act, it is not sufficient for the accused to raise a reasonable doubt as to his sanity; he must go one step further and prove to the satisfaction of the [trier of fact] that he was insane at the time of the commission of the act."  Taylor v. Commonwealth, 208 Va. 316, 322, 157 S.E.2d 185, 190 (1967) (citation omitted).

---

[2] The trial court incorrectly characterizes the Commonwealth's motion, which was to find as a matter of law that the defense had not met its burden to establish that the appellant was insane at the time of the offense.  In reviewing whether the trial court was correct in granting this motion, we do so in the context of the motion actually made and the reasons articulated by the court in granting it.

In *Wessels v. Commonwealth*, 164 Va. 664, 180 S.E. 419 (1935), the Supreme Court of Virginia elaborated on this standard stating:

> [T]he Commonwealth, having established the *corpus delicti*, and that the act was done by the accused, has made out her case. If [the accused] relies on the defense of insanity, he must prove it to the satisfaction of the jury. If, upon the whole evidence, they believe he was insane when he committed the act, they will acquit him on that ground; but not upon any fanciful idea that they believe he was then sane, yet, as there may be a rational doubt of such sanity, he is therefore entitled to an acquittal. Insanity is easily feigned and hard to be disproved, and public safety requires that it should not be established by less than satisfactory evidence.

*Wessels*, 164 Va. at 674, 180 S.E. at 423 (citation omitted).

"Virginia law recognizes two tests by which an accused can establish criminal insanity, the M'Naghten Rule and the irresistible impulse doctrine. The irresistible impulse defense is available when the accused's mind has become so impaired by disease that he is totally deprived of the mental power to control or restrain his act." *Bennett v. Commonwealth*, 29 Va. App. 261, 277, 511 S.E.2d 439, 447 (1999) (citations omitted). However, the accused must prove that his or her mental state met the appropriate legal definition of insanity "at the time the

- 9 -

offense was committed." Gibson v. Commonwealth, 216 Va. 412, 417, 219 S.E.2d 845, 849 (1975) (emphasis in original).[3]

Here, although there was ample testimony pertaining to Vann's schizo effective disorder, his past hospitalizations, and his apparent inability to resist the impulse to use cocaine at the time of Dr. Emiliani's evaluation, there was no testimony establishing that Vann was "totally deprived of the mental power to control or restrain" himself from acting at the time of the offenses. In fact, Dr. Emiliani very carefully avoided any opportunity to opine as to Vann's mental state at the time of the offenses, explaining that he had been unable to examine Vann either before the offenses or relatively close in time thereafter.

Furthermore, "[t]he word 'impulse' implies that which is sudden, spontaneous, unpremeditated." Rollins v. Commonwealth, 207 Va. 575, 580, 151 S.E.2d 622, 625 (1966). Acting on an

---

[3] Generally, voluntary intoxication, whether from drugs or alcohol, is no defense to a criminal charge. See Griggs v. Commonwealth, 220 Va. 46, 52, 255 S.E.2d 475, 479 (1979). It is true, however, that "Virginia . . . [does follow] the common-law rule that 'settled insanity' produced by [voluntary] intoxication does provide a defense to crime." Herbin v. Commonwealth, 28 Va. App. 173, 184, 503 S.E.2d 226, 231 (1998). Yet, such evidence of a longstanding narcotics addiction must be established in conjunction with some other physiological or psychological involvement in order to raise an issue of a mental defect or disease sufficient to serve as a basis for the insanity defense. Id. Moreover, an accused must still prove that his or her mental state met the appropriate legal definition of insanity at the time the offense was committed. Gibson, 216 Va. at 417, 219 S.E.2d at 849.

impulse involves no planning; it could occur at any place in the presence of anyone, and further, the lack of restraint inherent in an impulsive act is inconsistent with a contemporaneous concealment of the impulsive act.  See id.; see also Penn v. Commonwealth, 210 Va. 213, 221, 169 S.E.2d 409, 414 (1969). Vann methodically tried to conceal the contraband on both occasions immediately after he realized he was being observed by a police officer.  Such actions are inconsistent with the notion of an individual having no mental power or control over his or her own conduct.

Accordingly, we find that the trial court was not plainly wrong in determining that Vann failed to meet his burden and, thereby, finding as a matter of law that the affirmative defense of insanity by reason of an irresistible impulse had not been established.

Affirmed.