CLEMENTS, J.,
with whom BENTON and ELDER, JJ., join, dissenting.
For the reasons that follow, I would hold the trial court abused its discretion in denying appellant’s motion for a new trial based on after-discovered evidence that the psychiatric disorder from which she suffered, namely, dissociative identity disorder, rendered her legally insane at the time of the killing. Specifically, I would hold the trial court erred in concluding that appellant could have secured that evidence for use at trial through the exercise of reasonable diligence and that the admission of that evidence at another trial would not produce an opposite result. Accordingly, I respectfully dissent from the majority’s holdings to the contrary.
Our Supreme Court has consistently held that
[mjotions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance. The applicant bears the burden to establish that the evidence (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.
Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983) (citation omitted); see also Commonwealth v. Tweed, 264 Va. 524, 528-29, 570 S.E.2d 797, 800 (2002). “The burden is on the moving party to show that all four of these requirements have been met in order to justify a new trial.” Johnson v. Commonwealth, 41 Va.App. 37, 43, 581 S.E.2d 880, 883 (2003). As the majority points out, only the second and fourth requirements are at issue in this appeal.
*848 Because the granting of a motion for a new trial based on after-discovered evidence is addressed to the sound discretion of the trial court, the court’s “decision will not be reversed except for an abuse of discretion.” Carter v. Commonwealth, 10 Va.App. 507, 514, 393 S.E.2d 639, 643 (1990). A trial court may be found to have abused its discretion if the court uses “an improper legal standard in exercising its discretionary function,” Thomas v. Commonwealth, 263 Va. 216, 233, 559 S.E.2d 652, 661 (2002), or “makes factual findings that are plainly wrong or without evidence to support them,” Congdon v. Congdon, 40 Va.App. 255, 262, 578 S.E.2d 833, 836 (2003).
A. Reasonable Diligence
As previously mentioned, a new trial will not be granted on the basis of after-discovered evidence “unless such evidence could not have been discovered by the exercise of reasonable diligence in time for use at the former trial[].” McClung v. Folks, 126 Va. 259, 266, 101 S.E. 345, 347 (1919). Thus, the party seeking a new trial on the ground of after-discovered evidence must submit evidence (1) showing “that [s]he used reasonable diligence to secure [the after-discovered] evidence before the earlier trial” and (2) “explaining why [s]he was prevented from securing it.” Fulcher v. Whitlow, 208 Va. 34, 38, 155 S.E.2d 362, 365 (1967). “Reasonable diligence always depends upon the facts and circumstances of the case.” McClung, 126 Va. at 266, 101 S.E. at 347.
Here, the trial court determined that appellant failed to show that the evidence that she suffered from dissociative identity disorder at the time of the killing could not have been discovered for use at trial through the exercise of reasonable diligence. The record, however, does not support that determination. Indeed, the record reveals that appellant did everything that was reasonably possible prior to trial to discover grounds for entering a plea of not guilty by reason of insanity and that, despite those efforts, evidence supporting a diagnosis of dissociative identity disorder did not present itself to defense counsel or the psychiatrists and psychologists involved *849 in appellant’s treatment and evaluation until after the guilt phase of the trial had ended.
The undisputed evidence establishes that, well before trial, appellant’s counsel retained Dr. Fiester, a forensic psychiatrist and authority on personality disorders, and Dr. van Gorp, a clinical psychologist and neuropsychologist and an authority on malingering, to examine and evaluate appellant to determine if she had any psychiatric or psychological disorders that were relevant to her defense. Both doctors thoroughly examined and evaluated appellant and the materials related to the case, including the tape of appellant’s 911 call. While both doctors diagnosed appellant as having a propensity to dissociate and opined that the amnesia she experienced regarding her husband’s murder was the result of a dissociative episode caused by the trauma of her husband’s death, neither doctor found any evidence that would support a diagnosis of dissociative identity disorder or any other mental illness that would permit the reasonable assertion of an insanity defense. Thus, despite the exercise of reasonable diligence, appellant was precluded from entering an insanity defense at trial.
As the evidence further establishes, it was not until appellant entered into a childlike state after the jury rendered its verdict that Drs. Fiester and van Gorp encountered evidence that indicated she might be suffering from dissociative identity disorder. Soon after observing appellant in that state, Dr. Fiester testified that appellant’s condition raised the possibility that appellant could have dissociative identity disorder. Upon learning of the incident, Dr. van Gorp immediately wrote that “a multiple personality disorder must be seriously considered and psychologically and psychiatrically ruled out.” Explaining why he had not considered the possibility of appellant having dissociative identity disorder before then, Dr. van Gorp testified that a diagnosis of dissociative identity disorder “can only be made when [the patient’s] various alters, or separate personalities, emerge.” Similarly, Dr. Fiester testified that dissociative identity disorder cannot be diagnosed “without the presence of a separate identity.” Hence, Dr. Fiester explained, she did not have “enough information to ... *850 make the diagnosis” of dissociative identity disorder until appellant presented “as a twelve-year-old girl” after her conviction. Moreover, the evidence indicates that dissociative identity disorder is not easily diagnosed. Dr. Dell, who consulted with the staff at Central State Hospital during appellant’s treatment, testified that diagnosing dissociative identity disorder is difficult because the various alter personalities are “cautious, distrusting and hidden” and are not easily discernible, particularly to the untrained or inexperienced eye. Thus, the record contains uncontradicted explanations as to why the doctors earlier had not considered the possibility of appellant having dissociative identity disorder.
The evidence also shows that appellant did not have control over the timing of the emergence of her symptoms of dissociative identity disorder. Both Drs. Fiester and Loewenstein testified that people with dissociative identity disorder cannot control the switching that occurs between their alter personalities. Moreover, no psychologist or psychiatrist involved in appellant’s treatment or evaluation found that she was malingering or otherwise had control over the emergence of her symptoms. In fact, Dr. van Gorp, an expert in the detection of malingering, testified that, based on the normal slow evolution of the presentation of appellant’s symptoms and the results of specialized tests he gave her that were designed to detect malingering, he was “convinced” appellant was not feigning her psychiatric symptoms of dissociative identity disorder.
In relying on various “dissociative” episodes experienced by appellant before the trial as proof that appellant “exhibited the clinical symptoms of [dissociative identity disorder] necessary for a correct diagnosis before trial,” the majority appears to ignore the manifest distinction between mere “dissociation” and the much more serious condition of “dissociative identity disorder.” As Dr. Fiester testified, “dissociation,” by itself, “simply means the person doesn’t recall” because “[t]here’s a disconnect between the emotions and actions and the conscious awareness of [those emotions and actions.]” This was the diagnosis the doctors made before the trial. Dissociative *851 identity disorder, on the other hand, is, according to Dr. Fiester, a distinctive, severe dissociative disorder that involves “the emergence of another part of the personality that seems like almost a different person.”
The majority also relies on (1) Dr. Fiester’s pretrial allusion to “multiple personality disorder” in a wide-ranging discussion of the “variety of conditions” that can “trigger amnesia,” (2) Dr. Dell’s claim that he was able after appellant’s multiple personalities had already emerged to retrospectively discern evidence of appellant’s alter personalities from the transcript of the 911 call, and (3) Dr. Loewenstein’s statements that some aspects of appellant’s reported behavioral history were consistent with a diagnosis of dissociative identity disorder as grounds for concluding that Drs. Fiester and van Gorp should have been able, prior to trial, to diagnose appellant as suffering from dissociative identity disorder. In doing so, however, the majority appears to inappropriately place the responsibility for exercising the requisite diligence under Odum’s second requirement on Drs. Fiester and van Gorp, rather than on appellant and her trial counsel, and to inappropriately employ an extraordinary, rather than reasonable, standard of diligence. See Odum, 225 Va. at 130, 301 S.E.2d at 149 (“The applicant bears the burden to establish that the [after-discovered] evidence ... could not have been secured for use at the trial in the exercise of reasonable diligence by the movant ____“ (emphasis added)). It is uncontroverted that the two doctors hired by appellant’s counsel to examine and evaluate appellant before the trial were both accomplished mental health professionals who were eminently suited for performing the task at hand. Indeed, Dr. Fiester was an authority on personality disorders and was, in fact, a member of the “work group” that prepared the DSM-IV “in the area of personality disorders specifically.” It is also clear from the record that Dr. van Gorp’s and Dr. Fiester’s pretrial examinations and evaluations of appellant and the 911 call were thorough and extensive. Moreover, Drs. Dell and Loewenstein examined appellant and the transcript of the 911 call after, and with knowledge of, the post-conviction emergence of appellant’s *852 alter personalities, a benefit Drs. Fiester and van Gorp did not have before trial.
Furthermore, the majority’s reliance on the out-of-state decisions it cites is, in my opinion, misplaced. The Wisconsin cases cited by the majority, State v. Fosnow, 240 Wis.2d 699, 624 N.W.2d 883 (Wis.Ct.App.2000), and State v. Williams, 246 Wis.2d 722, 631 N.W.2d 623 (Wis.Ct.App.2001), overruled on other grounds by State v. Morford, 268 Wis.2d 300, 674 N.W.2d 349, 362 (Wis.2004), are factually dissimilar from this case, and the Oklahoma and Michigan cases cited by the majority, Sellers v. State, 889 P.2d 895 (Okla.Crim.App.1995), and People v. McSwain, 259 Mich.App. 654, 676 N.W.2d 236 (2003), are likewise inapposite.
In Fosnow, where the defendant had a lengthy history of mental illness and it was known prior to his guilty plea that he heard “voices,” had significant “memory lapses,” suffered from “traumatic” childhood abuse, and had “imaginary friends” who made him “do bad things,” the court concluded that “Fosnow and his trial counsel were aware of a possible [dissociative identity disorder] diagnosis from [one of the examining psychiatrist’s] report and did not choose to obtain additional evaluations that might have supported it [prior to entry of the guilty plea].” 624 N.W.2d at 889-91. In Williams, the purported newly discovered evidence was “simply [the psychologist’s] assessment of pre-existing information, the same information [previously reported and] utilized by [the physician who originally examined the petitioner].” 631 N.W.2d at 627. In each case, unlike in this case, the purported newly discovered evidence was “previously known but not used.” Fosnow, 624 N.W.2d at 886. In other words, it was merely a reassessment of the same evidence that had been discovered earlier, which is not the case here.
In McSwain, where the defendant was diagnosed with having dissociative identity disorder more than eight years after her conviction, the court concluded that, while there was considerable evidence in the record regarding the defendant’s “current mental condition,” the record failed to establish she *853 suffered from dissociative identity disorder at the time of the offense or trial. 676 N.W.2d at 254-55. In Sellers, the defendant claimed in his application for post-conviction relief based on newly discovered evidence solely that his multiple personality disorder could not have been discovered prior to trial because the disorder was “greatly misunderstood and often misdiagnosed.” 889 P.2d at 897. Summarily rejecting Sellers’s claim without setting forth or addressing any evidence relative thereto, the court simply ruled that, while “perhaps a relatively new mental disease,” multiple personality disorder was a “recognized illness which defense counsel could have investigated.” Id. Neither of the issues upon which these cases turned is on point here.
Because the record conclusively demonstrates that appellant used reasonable diligence prior to trial in seeking evidence that could reasonably serve as a basis for an insanity plea and explains why, despite that reasonable diligence, she was prevented from securing such evidence until after her conviction, I would hold that the trial court abused its discretion in finding appellant failed to meet her burden of establishing that the evidence that she suffered from dissociative identity disorder “could not have been secured for use at the trial in the exercise of reasonable diligence by [her].” Odum, 225 Va. at 130, 301 S.E.2d at 149.
B. Materiality and Effect at Another Trial of the After-Discovered Evidence
Pursuant to the fourth requirement for obtaining a new trial based on after-discovered evidence, the defendant must establish that such evidence “is material, and such as should produce opposite results on the merits at another trial.” Id. (emphasis added). This “well-settled” standard has also been stated to require that the evidence be such that it “ ‘ought to produce opposite results on the merits’” at another trial. Lewis v. Commonwealth, 209 Va. 602, 608-09, 166 S.E.2d 248, 253 (1969) (emphasis added) (quoting Reiber v. Duncan, 206 Va. 657, 663, 145 S.E.2d 157, 162 (1965)). It is not enough, therefore, for the defendant to simply show that the evidence *854 in question might produce an acquittal. Indeed, “[b]efore setting aside a verdict, the trial court must have evidence before it to show in a clear and convincing manner ‘as to leave no room for doubt’ that the after-discovered evidence, if true[,] would produce a different result at another trial.” Carter, 10 Va.App. at 513, 393 S.E.2d at 642 (quoting Powell v. Commonwealth, 133 Va. 741, 756, 112 S.E. 657, 661 (1922)).[8]
Here, the trial judge, observing that the jury recommended a heavy sentence for appellant, concluded that the purported after-discovered evidence “would not produce opposite results on the merits at another trial” because the jury heard at the penalty phase the after-discovered evidence, including that appellant “had [dissociative identity disorder], that there were multiple personalities, [and that] ... another personality is the one that committed the murder.”
Initially, I would hold the trial court abused its discretion in relying on the jury’s apparent rejection of appellant’s mitigating evidence at sentencing as grounds for concluding that such *855 evidence would not produce a different result at the guilt phase. The correct standard is not whether the jury that convicted the defendant without benefit of the after-discovered evidence would, after hearing the new evidence, recommend a lenient sentence, but, rather, whether the new evidence “is material, and such as should produce opposite results on the merits at another trial,” with a new jury. Odum, 225 Va. at 130, 301 S.E.2d at 149 (emphasis added).
The circumstances of this case exemplify the underlying rationale and merits of that distinction. Before sentencing, the jury heard no evidence regarding appellant’s psychological state at the time of the killing. Because the evidence that later supported a diagnosis of dissociative identity disorder had not been discovered, appellant’s experts were limited during the guilt phase of the trial to providing a general discussion of the nature of dissociative amnesia as a possible explanation of appellant’s unusual post-killing behavior. Rejecting that explanation and appellant’s claim of self-defense in favor of the Commonwealth’s argument that appellant’s unusual post-killing behavior was an attempt to cover up a malicious killing, the jury convicted her of murder. After appellant’s alter personalities emerged, she filed a motion requesting a new trial based on the after-discovered evidence. She asked that the trial court defer ruling on the motion for a new trial until after presentation of her evidence in mitigation of the offense since the same evidence would be used to support the motion. The trial judge agreed that his ruling on the motion should be deferred “until the trial is completed.” Having previously found appellant to be a murderer and a liar, the jury, not unsurprisingly, found her belated mitigating evidence of insanity unpersuasive.[9] Indeed, the change in *856 appellant’s theory of defense might itself have adversely affected the jury’s perception of her character. Regardless, the jury’s sentencing verdict clearly is not a reliable indicator of how a new, untarnished fact finder would view such evidence “at another trial” where insanity was at issue in the guilt phase. Id.
Evidence reasonably offered to support a defendant’s claim that he or she was legally insane at the time of the alleged offense has long been recognized in Virginia as being material to the issue of the defendant’s guilt. See Boswell v. Commonwealth, 61 Va. (20 Gratt.) 860, 874-76 (1871) (“If [the defendant] relies on the defence of insanity, he must prove it to the satisfaction of the jury. If, upon the whole evidence, they believed he was insane when he committed the act, they will acquit him on that ground.”); Evans-Smith v. Commonwealth, 5 Va.App. 188, 196, 361 S.E.2d 436, 441 (1987) (“Evidence is material if it relates to a matter properly at issue.”).
Virginia law recognizes two tests by which an accused can establish criminal insanity, the M’Naghten Rule and the irresistible impulse doctrine. The irresistible impulse defense is available when “the accused’s mind has become ‘so impaired by disease that he is totally deprived of the mental power to control or restrain his act.’ ”
Bennett v. Commonwealth, 29 Va.App. 261, 277, 511 S.E.2d 439, 446-47 (1999) (quoting Godley v. Commonwealth, 2 Va. App. 249, 251, 343 S.E.2d 368, 370 (1986) (quoting Thompson *857 v. Commonwealth, 193 Va. 704, 716, 70 S.E.2d 284, 292 (1952))).
The after-discovered evidence in this case consists of substantive information, in the form of expert-witness testimony and proffered evidence, indicating that appellant suffered from dissociative identity disorder at the time of the shooting and that one or more of her alter personalities, other than the host or baseline personality of Janice Orndorff, was responsible for committing the charged offenses. The after-discovered evidence also indicates that appellant was not malingering in her presentation of dissociative identity disorder symptoms, that she was unable to control the switching between the alter personalities within her, that her alter personalities recurrently took control of her behavior, and that her host personality of Janice had no memory of her husband’s murder. Dr. Loewenstein testified that one of appellant’s protector alter personalities admitted to killing appellant’s husband to protect the host personality. Dr. Loewenstein stated in his affidavit that, upon his forensic evaluation of appellant, he concluded that, at the time of the killing, appellant “suffered from an impulse that was sudden, spontaneous, and unpremeditated.” Dr. Loewenstein further concluded that appellant was so “overwhelmed” by symptoms of dissociative identity disorder and other less severe mental disorders and “so impaired by these diseases of the mind[,] that she was deprived of the mental power to control or restrain her acting to harm [her husband].” Dr. Loewenstein also concluded that appellant was suffering from an irresistible impulse when she shot her husband and was, thus, legally insane at the time of the killing.
Although it is within the province of the fact finder to decide whether appellant’s mind was “so impaired by disease that [she was] totally deprived of the mental power to control or restrain” herself from acting at the time of the offenses, if trae, Dr. Loewenstein’s testimony and affidavit, in combination with the other after-discovered evidence presented in this case, present a viable defense of legal insanity under the doctrine of irresistible impulse. Bennett, 29 Va.App. at 277, *858 511 S.E.2d at 447 (quoting Godley, 2 Va.App. at 251, 343 S.E.2d at 370 (quoting Thompson, 193 Va. at 716, 70 S.E.2d at 292)). I would hold, therefore, that the after-discovered evidence is material to the issue of appellant’s guilt and is sufficient to “show in a clear and convincing manner ‘as to leave no room for doubt’ that the after-discovered evidence, if true[,] would produce a different result at another trial.” Carter, 10 Va.App. at 513, 393 S.E.2d at 642 (quoting Powell, 133 Va. at 756, 112 S.E. at 661).
The Commonwealth argues that, as a matter of law, the after-discovered evidence does not provide a valid defense of legal insanity under the irresistible impulse doctrine because “the evidence overwhelmingly established that subsequent to the alleged irresistible impulse the defendant doctored the scene of the crime ... and called her attorney for assistance.” I disagree.
While it is true, generally, that, as logic dictates, “the lack of restraint inherent in an impulsive act is inconsistent with a contemporaneous concealment of the impulsive act,” Vann v. Commonwealth, 35 Va.App. 304, 314, 544 S.E.2d 879, 883 (2001), here, given the volatile, “switching” nature of appellant’s mental disorder, the fact that appellant called her attorney and “doctored the scene of the crime” after the shooting does not mean that she was not acting pursuant to an irresistible impulse when she shot her husband. As previously noted, people with dissociative identity disorder cannot restrain their alter personalities from recurrently taking and relinquishing control of their behavior. The shifts between and among the alter personalities can occur very quickly. Furthermore, as Dr. Loewenstein testified, the switching by the alter personalities tends to increase when the host personality is frightened.
Thus, the record supports the finding that, as the Commonwealth appears to concede, the phone call to appellant’s attorney and any manipulation of the crime scene by appellant occurred “subsequent to the ... irresistible impulse” that resulted in the killing. That is to say, after killing appellant’s *859 husband, appellant’s alter personalities relinquished control of her behavior, leaving her “behind to attempt to deal with what happened.” The post-shooting phone call and any manipulation of the scene do not change the fact that, having had her behavior taken over by one or more of her protector alter personalities at the time of the shooting, appellant herself was not responsible for shooting her husband. Hence, as a matter of logic, Vann would not apply.
The record also supports the converse finding that, as Drs. Loewenstein’s and Dell’s testimony appears to suggest, appellant’s alter personalities continued to control her behavior following the shooting. According to Dr. Loewenstein, one of appellant’s protector alter personalities stated that he directed appellant to call her attorney after the shooting. Dr. Dell testified that appellant was still being controlled by her alter personalities well after the shooting during the 911 call. Clearly, appellant may not be held accountable under Vann for the phone call to her attorney and for doctoring the crime scene if, as during the shooting, her actions were still being controlled by her alter personalities at the time. Like the shooting itself, such actions would be the product of an irresistible impulse.
Thus, under either interpretation of the facts, the evidence of appellant’s post-shooting phone call to her attorney and doctoring of the crime scene does not alter my conclusion that the after-discovered evidence provides appellant a valid defense of legal insanity under the irresistible impulse doctrine. To conclude otherwise would defy logic and elevate form over substance.
Hence, I would hold that appellant met her burden of establishing that the after-discovered evidence “is material, and such as should produce opposite results on the merits at another trial.” Odum, 225 Va. at 130, 301 S.E.2d at 149.
C. Conclusion
Having concluded that appellant met the requirements necessary to obtain a new trial based on after-discovered evi *860 dence, I would hold the trial court abused its discretion in refusing to grant appellant a new trial. Accordingly, I would reverse the trial court’s denial of the motion for a new trial, vacate appellant’s convictions for murder in the second degree and use of a firearm in the commission of murder, and remand this case for retrial.[10]

. I cite to Carter because it is a prior opinion from this Court concerning after-discovered evidence. I note, however, that the efficacy of this quotation may be problematic when the issue does not involve perjury. This quotation in Carter is based upon the following language in Powell, which concerned new evidence being offered to establish perjury:
The courts properly require that it shall be made to appear affirmatively that the new evidence tending to show the mistake or the perjury, beyond question exists and is not a mere matter of belief or opinion, before they will grant the relief in such cases. Where the ground is perjury, the old rule was that the witness must appear of record to have been convicted of the perjury or his death must have rendered conviction impossible, before it could be regarded as good ground for the new trial. The modern rule is not so strict. By the preponderance of authority it seems to be sufficient if the court has evidence before it which establishes the existence of the evidence relied on to show the perjury or mistake, in such a clear and convincing manner as to leave no room for doubt as to the existence of the evidence so relied on, and the court is satisfied that the evidence is not collusive, that it seems to be true, and ought, if true, to produce on another trial an opposite result on the merits.
133 Va. at 755-56, 112 S.E. at 661 (emphases added). In short, the Powell opinion concerns evidence to "show ... perjury,” and it uses the "clear and convincing” standard to refer "to the existence of the evidence” that is offered to support the request for a new trial. Id. at 756, 112 S.E. at 661 (emphasis added).

. The majority points out that the jury heard testimony during the sentencing phase of the trial from Dr. Sheneman that appellant did not meet the criteria for dissociative identity disorder and from appellant’s cellmate that appellant said she could manipulate her apparent personalities at will. However, the jury also heard Dr. Sheneman testify that he had only experienced one of appellant’s alter personalities and had mistakenly believed that dissociative identity disorder required two *856 alter personalities in addition to the host personality. Dr. Sheneman also testified that neither he nor the other member of appellant's treatment team specialized in dissociative disorders and that they did not perform any psychological testing on appellant during her stay at Central State Hospital, relying instead on Dr. van Gorp’s testing. Moreover, the jury heard Dr. Fiester testify that she would not be surprised to learn that someone suffering from dissociative identity disorder had told others that she could manipulate her alter personalities, because people who have dissociative identity disorder are frightened by the effects of the disorder and, as a means of coping with their fear, want to believe they "have control over this process” when, in actuality, they do not. Dr. Fiester further testified that some alter personalities, particularly the protective ones, feel they are in control even though, in actuality, they cannot "control switching.”

. Because it is unlikely they would arise again on retrial in the same context, if at all, I find it unnecessary to address the other issues raised in this appeal.