COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Ortiz and Raphael
Argued at Norfolk, Virginia

PUBLISHED

WILLIAM WINN KHINE

OPINION BY
v.        Record No. 0900-21-1          JUDGE STUART A. RAPHAEL
SEPTEMBER 13, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge

Catherine French Zagurskie, Chief Appellate Counsel (Virginia
Indigent Defense Commission, on briefs), for appellant.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a bench trial, the trial court convicted appellant William Winn Khine of first-degree murder for killing his wife, Khin Shwe. On appeal, Khine challenges the trial court's decision to admit a witness's hearsay statement that Shwe said the day before she was killed that she planned to tell Khine that she wanted a divorce. Khine also challenges the trial court's ruling, at the close of evidence, to strike Khine's irresistible-impulse insanity defense.

We find no error in the evidentiary ruling because the statement about Shwe's divorce plans was admissible under the state-of-mind exception to the hearsay rule. But the trial court erred in striking Khine's insanity defense because it failed to view the evidence in the light most favorable to Khine. Under that standard, Khine met his burden of production on his affirmative defense. The trial judge, sitting as the factfinder, should have instead determined whether Khine carried his burden of persuasion to prove by a preponderance of the evidence that Khine was totally deprived

of the ability to resist the voices that he claims commanded him to kill his wife. So we vacate the conviction and remand the case for further proceedings consistent with this opinion.

BACKGROUND[1]

On March 10, 2017, Khine strangled Shwe to death with his hands and a pair of pajama bottoms. Shwe also suffered blunt-force trauma to her head and upper arms, consistent with contusions caused by someone trying to control her. At the urging of his friend, Khine called 911 to report what he had done, telling the 911 operator that he had heard voices "controlling his mind" that told him to strangle Shwe. Khine reiterated his claim to the responding officers. The officers found Shwe's body and the pajama bottoms in the house. Khine did not conceal the evidence.

Khine was arrested and found competent to stand trial by two psychologists. One of them, Dr. Evan S. Nelson, described Khine's account of the voices that he claimed to be hearing:

> Mr. Khine explained that he heard voices even now at the jail. . . .
> He could have a conversation with the voices but did not like to
> respond [to] them, and he did not find the voices to be a pleasant or
> enjoyable experience; he preferred to sleep as a means to cut them
> off. . . . Mr. Khine claimed that the voices sometimes told him to
> do things, like start a fight with the other inmates. However,
> nowadays he resisted doing what they proposed.

The grand jury returned an indictment for first-degree murder under Code § 18.2-32. The trial court granted defense counsel's motion for a psychological evaluation of Khine's sanity at the time of the offense. The court appointed Dr. Ann Vanskiver, a clinical psychologist, to perform an independent evaluation. The parties stipulated that Dr. Vanskiver was "an expert qualified to testify as to the Defendant's mental status at the time of [the] offense."

---

[1] Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by Khine. To the extent that certain facts are found in the sealed portions of the record, we unseal those portions only as to those specific facts mentioned in this opinion. The rest remains sealed. *See Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

After studying Khine's case and meeting with him three times, Dr. Vanskiver reported that, "at the time of the offense, Mr. Khine was responding to delusional thoughts and auditory hallucinations, resulting in his actions." Khine heard a voice that he called "the voice controller." Khine said that the voice controller commanded him to kill his wife. Khine "understood that his actions were wrong . . . and he understood that the consequences of his actions would result in his wife's death." Still, Dr. Vanskiver found "evidence to suggest that [Khine] was experiencing symptoms to the extent of impairing his ability to resist the impulse to commit the offense" and that Khine "believed that the nature of the voice controller was that he needed to follow [its] commands." She explained that Khine "was unable to rationally think through the reality of the situation, and assaulted his wife, following the directives of the voices he was hearing." Dr. Vanskiver found that "Khine was indeed suffering from the symptoms consistent with an acute episode of psychosis at the time of the alleged offense." She added that her investigation satisfied her that Khine was not overstating his symptoms and that he was not malingering.

The case was tried without a jury. The trial court denied Khine's motion to strike the Commonwealth's evidence and his renewed motion to strike after the defense rested. In its rebuttal case, the Commonwealth called two witnesses: a neighbor, Crystal Rosario, and a co-worker, Rebecca Simonton. Rosario testified that she had communicated with Khine nearly daily for nine months and had never observed him talking to himself or acting as if he were interacting with someone not present. Simonton testified that, the day before Khine killed Shwe, she witnessed Khine and Shwe leaving their store; both were visibly upset and Khine appeared angry. Simonton also testified, over Khine's objection, that Shwe told her she was planning to tell Khine that she wanted a divorce.

After receiving all evidence and hearing closing arguments, the trial court granted the Commonwealth's motion to strike Khine's insanity defense, finding as a matter of law that Khine

failed to show that he was "totally deprived of the mental power to control or restrain" his actions. The court then convicted Khine of first-degree murder. The court sentenced Khine to forty-five years in prison with fifteen years suspended and a fine of $1,000 (which the court suspended).

ANALYSIS

Khine argues that the trial court erred in admitting Simonton's testimony—that Shwe said she planned to tell Khine she wanted a divorce—because the Commonwealth failed to show that Shwe's statement was communicated to Khine. He argues that the trial court erred in striking his insanity defense because, taking the facts in the light most favorable to Khine, he satisfied his production burden to show that an irresistible impulse caused him to kill Shwe. And he argues that the evidence was insufficient to convict him of first-degree murder because he was not guilty by reason of insanity.

### A. Shwe's statement that she planned to tell Khine that she wanted a divorce was admissible under the Hillmon doctrine (Assignment of Error 1).

We review a trial court's evidentiary ruling under an abuse of discretion standard. *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017). If an admissibility determination involves a question of law, however, we review that issue de novo. *Beckham v. Commonwealth*, 67 Va. App. 654, 658 (2017). And by definition, a trial court "abuses its discretion when it makes an error of law." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). Hearsay is inadmissible unless permitted by an exception, and the party offering the evidence must "clearly show" that the exception applies. *Clay v. Commonwealth*, 33 Va. App. 96, 104 (2000) (en banc), *aff'd*, 262 Va. 253 (2001).

- 4 -

Khine argues that the trial court erred in admitting Simonton's hearsay testimony that Shwe said she planned to tell Khine she wanted a divorce. Simonton's statement was hearsay because it was offered for the truth of the assertion that Shwe planned to tell Khine that she wanted a divorce:

> Q[:] What was that statement [Shwe] made to you regarding her relationship on March 9th?
>
> A[:] She told me she was going to ask [Khine] or tell him she wanted a divorce.

The Commonwealth offered that evidence to show Khine's motive for killing Shwe and to prove that he committed first-degree murder, which requires a "willful, deliberate, and premeditated killing." Code § 18.2-32.

The Commonwealth maintains that Shwe's hearsay statement was properly admitted under the state-of-mind exception, which permits a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." Va. R. Evid. 2:803(3). "Generally, statements made by a crime victim that show the victim's state of mind are admissible as an exception to the hearsay rule, provided the statements are relevant and probative of some material issue in the case." *Clay v. Commonwealth*, 262 Va. 253, 257 (2001).

"The key to the admissibility of evidence showing a victim's state of mind is thus its relevance to a material issue in the case." *Hodges v. Commonwealth*, 272 Va. 418, 436 (2006). "[F]or the state of mind of the victim to be relevant to prove the state of mind of the accused, some nexus must exist which inferentially implicates the accused," such as "'previous threats made by the defendant towards the victim, narrations of past incidents of violence on the part of the defendant or general verbalizations of fear of the defendant.'" *Clay*, 33 Va. App. at 105 (quoting *Hanson v. Commonwealth*, 14 Va. App. 173, 188-89 (1992)).

Khine is correct that some statements by decedents that illuminate their state of mind have been held to be inadmissible when the prosecution failed to show that the statement was communicated to the defendant. In *Hodges*, for instance, the Supreme Court held that it was error to admit a witness's statement that the murder victim said she planned to testify against the defendant because there was "no evidence" that the victim's intent "was ever communicated" to the defendant. 272 Va. at 437-38. Likewise, we found in *Hanson* that the trial court erred in admitting a witness's statement that the murder victim—the defendant's roommate—said that he planned to move out and that the defendant was not paying his share of expenses. 14 Va. App. at 187-88. Although those statements reflected the victim's state of mind, they were not relevant to the defendant's motive absent evidence that the victim's statements were "communicated to" the defendant. *Id.* at 188.

But Shwe's statement here falls into a different category because it was offered as evidence to show that Shwe *herself* acted in accordance with her *own* stated intention: to tell Khine that she wanted a divorce. That statement was admissible under the *Hillmon* doctrine, *Mut. Life Ins. Co. v. Hillmon*, 145 U.S. 285, 295-96 (1892), which our Supreme Court adopted in *Hodges*. *See Hodges*, 272 Va. at 442; Kent Sinclair, *The Law of Evidence in Virginia* § 15-20[c], at 1074 (8th ed. 2018) ("Any uncertainty about the vitality of the *Hillmon Doctrine* was swept away in the Supreme Court of Virginia's decision in *Hodges v. Commonwealth*.").

*Hillmon* was a life-insurance dispute in which the insurer defended against a claim on the policy on the ground that the named insured, Hillmon, was not really dead and that the decedent was actually Frederick Walters. 145 U.S. at 287. The decedent was killed by an accidental shooting at Crooked Creek. *Id.* The Court held that there was no error in admitting a letter from Walters in which he wrote that he planned to travel with Hillmon from Wichita to Crooked Creek. *Id.* at 288, 294-96. The Court explained that the statement was admissible,

no[t] . . . as proof that [Walters] actually went away from Wichita, but as evidence that, shortly before the time when other evidence tended to show that he went away, he had the intention of going, and of going with Hillmon, which made it more probable both that he did go and that he went with Hillmon than if there had been no proof of such intention.

*Id.* at 296.

Applying the *Hillmon* doctrine in *Hodges*, our Supreme Court held that the trial court properly admitted a witness's testimony that, the day before she was killed, the victim said she was "going to meet" the defendant and "would be right back." 272 Va. at 425, 442. That statement "was admissible as proof of [the victim's] intent and the corresponding probability that she indeed met [the defendant] on the day of her disappearance." *Id.* at 443.[2]

Although neither party has cited the *Hillmon* doctrine, we find it controlling here. Just like the decedent's statements in *Hillmon* and *Hodges*, Shwe's statement that she was going to "tell [Khine] she wanted a divorce" was admissible as evidence that Shwe acted in accordance with her plan. Simonton further testified that Shwe told her that plan the day before the killing and that Simonton later saw the couple leaving the store together, with Khine visibly upset. Taken together, that evidence "made it more probable . . . than if there had been no [such] proof," *Hillmon*, 145 U.S. at 296, that Shwe carried through with her stated intent. Accordingly, we find no error in the trial court's decision to admit that evidence.

---

[2] The Supreme Court of Virginia first cited *Hillmon* in *Karnes v. Commonwealth*, 125 Va. 758, 764 (1919). *See Hodges*, 272 Va. at 442 n.15. But the principle has an even older pedigree in the Commonwealth. *See Cluverius v. Commonwealth*, 81 Va. 787, 804-10 (1886) (holding that the trial court properly admitted the decedent's statement in a letter about her intent to leave for Richmond as evidence that she acted accordingly); *Dock v. Commonwealth*, 62 Va. (21 Gratt.) 909, 913-14 (1872) (holding that the trial court properly admitted the decedent's statement that he planned to go by the defendant's residence to see if he could employ him).

- 7 -

B. *The trial court erred in determining that Khine had not satisfied his burden of production on his insanity defense (Assignment of Error 2).*

In Virginia, "insanity is an affirmative defense that the defendant must establish to the satisfaction of the fact finder." *Brown v. Commonwealth*, 68 Va. App. 746, 795 (2018); *Taylor v. Commonwealth*, 208 Va. 316, 322 (1967) (same). Virginia recognizes two tests for determining whether a defendant is not guilty by reason of insanity: the *M'Naghten* test and the irresistible-impulse doctrine. *Vann v. Commonwealth*, 35 Va. App. 304, 313 (2001). Under the *M'Naghten* test,

> [I]t must be clearly proved that, at the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong.

*Price v. Commonwealth*, 228 Va. 452, 457 (1984) (quoting *M'Naghten's Case*, 10 Cl. & F. 200, 210, 8 Eng. Rep. 718, 722-23 (1843)).

By contrast, "[t]he irresistible impulse defense is available when the accused's mind has become so impaired by disease that he is totally deprived of the mental power to control or restrain his act." *Vann*, 35 Va. App. at 313 (quoting *Bennett v. Commonwealth*, 29 Va. App. 261, 277 (1999)). That impairment must exist "at the time" of the offense. *Id.* at 313-14. Khine based his insanity defense only on the irresistible-impulse doctrine.

"To present evidence of insanity to the fact finder, an accused must first make a *prima facie* showing that his evidence meets the requirements of the affirmative defense." *Morgan v. Commonwealth*, 50 Va. App. 120, 126 (2007). "Prima facie evidence is '[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced.'" *White v. Commonwealth*, 272 Va. 619, 626 (2006) (quoting *Black's Law Dictionary* 598 (8th ed. 2004)). The evidence to satisfy the defendant's production burden on an insanity defense must amount "to more than a scintilla." *Herbin v. Commonwealth*, 28 Va. App. 173, 181 (1998). A trial court

- 8 -

properly strikes a defendant's insanity defense if the defendant fails to satisfy his burden of production. *Vann*, 35 Va. App. at 312-14.

Assuming the defendant satisfies his production burden, he must then also satisfy his burden of persuasion that he is not guilty by reason of insanity, as Virginia allocates "both the burden of production and the burden of persuasion" to the defendant to prove an insanity defense. *Morgan*, 50 Va. App. at 134. The defendant "bears the burden of proving the defense [of insanity] by a preponderance of the evidence." *Brown*, 68 Va. App. at 795. "This does not shift the ultimate burden of proof which rests upon the Commonwealth to prove the commission of the alleged offense beyond a reasonable doubt." *Taylor*, 208 Va. at 322.

In granting the Commonwealth's motion to strike, the trial court set forth the correct legal standard for a defendant to prove an irresistible-impulse insanity defense: "that his mind has become so impaired by [a mental] disease that he is totally deprived of the mental power to control or restrain his act." *See, e.g.*, *Morgan*, 50 Va. App. at 127 ("The irresistible impulse defense is available 'where the accused's mind has become "so impaired by disease that he is totally deprived of the mental power to control or restrain his act."'" (quoting *Godley v. Commonwealth*, 2 Va. App. 249, 251 (1986))); *see also Thompson v. Commonwealth*, 193 Va. 704, 717 (1952) (same); *Dejarnette v. Commonwealth*, 75 Va. 867, 878 (1881) ("some unseen pressure on the mind, drawing it to consequences which it sees, but cannot avoid, and placing it under a coercion which, while its results are clearly perceived, it is incapable of resisting"). While the defendant is "able to understand the nature and consequences of the act charged against him and to perceive that it is wrong, [he] is unable, because of such mental disease, to resist the impulse to do it." *Thompson*, 193 Va. at 717 (quoting 14 Am. Jur. *Criminal Law* § 35, at 793). Such an "irresistible impulse" must be "distinguished from mere passion or

overwhelming emotion not growing out of, and connected with, a disease of the mind." *Id.* (quoting 14 Am. Jur., *supra*).

In granting the Commonwealth's motion to strike Khine's insanity defense, the trial court determined that Dr. Vanskiver "did not address [Khine's] inability to control his actions or restrain himself." The court said that she failed to testify that Khine was "powerless to control himself."

But the trial court erred in reaching those conclusions because it failed to consider the evidence in the "light most favorable" to Khine, the non-moving party. *Herbin*, 28 Va. App. at 181. Viewed in that light on the motion to strike, the evidence sufficed to show that Khine killed his wife because he was "totally deprived" of the mental power to control or restrain his actions. Dr. Vanskiver opined that, "at the time of the offense, Mr. Khine was responding to delusional thoughts and auditory hallucinations, resulting in his actions. That is, *he was unable to rationally think through* the reality of the situation, and assaulted his wife, *following the directives of the voices* he was hearing." (Emphasis added). Dr. Vanskiver's opinion was buttressed by statements from Khine that, taken in the light most favorable to him, supported that he lacked any control over his actions. Khine said that "the voice it was hurting me, it was telling me to go to work, the controller he attacked me. It was like I can't control my mind." Dr. Vanskiver noted that Khine also told the 911 operator that the voices "pushed me to kill"; "I don't do it somebody pushed me in my mind." Dr. Vanskiver testified that Khine "believed that the nature of the voice controller was that he needed to follow its commands." She concluded that Khine "was indeed suffering from the symptoms consistent with an acute episode of psychosis." "Additionally, . . . there is evidence to suggest that [Khine] was experiencing symptoms *to the extent of impairing his ability to resist the impulse* to commit the offense." (Emphasis added).

To be sure, there is some ambiguity and lack of forcefulness in Dr. Vanskiver's words. They could be narrowly construed to mean that Khine suffered *partial* impairment, or more liberally construed to mean a *total* impairment of Khine's ability to control his actions. But the trial court was required on the motion to strike to accept as true all the evidence favorable to Khine, as well as all reasonable inferences that could be drawn from that evidence. *Green v. Ingram*, 269 Va. 281, 290 (2005). The court had to "resolve any reasonable doubt as to the sufficiency of the evidence," *id.*, in Khine's favor. And the court could not "judge the weight and credibility of the evidence," nor "reject any inference from the evidence favorable to [Khine] unless it would defy logic and common sense.'" *Id.* (quoting *Upper Occoquan Sewage Auth. v. Blake Constr. Co.*, 266 Va. 582, 590 n.6 (2003)).

Under that standard, the evidence from Dr. Vanskiver supported Khine's affirmative defense that he was totally unable to resist the voice in his head that commanded him to kill his wife. Because the trial court failed to apply the correct legal standard, it erred in granting the Commonwealth's motion to strike.

What is the appropriate appellate remedy? The Commonwealth argues that it would be a remand to the trial court without requiring the case to be retried:

> Because the trial court found as a matter of law Khine did not meet his burden of production there was never an opportunity to address whether Khine met his burden of persuasion. Therefore, . . . the appropriate remedy should be remand, to allow the circuit court to determine whether Khine met his burden of persuasion.

Commonwealth Br. 26 n.5. Although Khine requests and prefers a new trial, his counsel agreed at oral argument that it would not be error to remand the case to the trial court to determine whether Khine satisfied his burden of persuasion.

While "we are not bound by . . . the parties' agreement on an issue of law," *Moonlight Enters., LLC v. Mroz*, 293 Va. 224, 234 n.5 (2017), we agree that the remand described by the

- 11 -

Commonwealth is most appropriate. Because the Commonwealth moved to strike Khine's affirmative defense during its closing argument, *all* the evidence had been presented. The only question was how the trial court, sitting as the factfinder, should weigh the evidence. In analogous circumstances, we have said that when the trial court applied "an incorrect legal standard[,] . . . the proper appellate response is to vacate the convictions and remand the case to the trial court with instructions." *Edwards v. Commonwealth*, 49 Va. App. 727, 742 & n.2 (2007); *see also Orndorff v. Commonwealth*, 271 Va. 486, 505 (2006) ("Because the circuit court employed an improper legal standard in exercising its discretionary function, the standard of appellate review examining whether the court abused its discretion could not be applied. Instead, the proper remedy for the circuit court's error was to remand the case to that court for proper application of the [correct standard]." (citation omitted)). The same is true here. On remand, the trial court should determine whether Khine carried his burden of persuasion to prove by a preponderance of the evidence that he acted under an irresistible impulse to kill his wife.[3]

CONCLUSION

The trial court did not err in admitting Simonton's hearsay testimony that Shwe said she planned to tell Khine that she wanted a divorce. But it did err when it granted the Commonwealth's motion to strike Khine's insanity defense as a matter of law and failed to evaluate that defense on the merits. We therefore vacate the conviction and remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

---

[3] Because we remand this case to the trial court for further proceedings, Khine's third assignment of error is moot: whether the "trial court erred by convicting Mr. Khine of first-degree murder instead of finding that Mr. Khine was not guilty by reason of insanity."