In re the Commitment of Daniel Williams:

State of Wisconsin, Petitioner-Respondent,

v.

Daniel Williams, Respondent-Appellant.

Court of Appeals

*No. 00–2365. Submitted on briefs February 9, 2001.—Decided May 30, 2001.*

2001 WI App 155

(Also reported in 631 N.W.2d 623.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Adrienne M. Moore*, assistant state public defender, of Racine.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Daniel Williams, a civilly committed WIS. STAT. ch. 980 patient held at the Wisconsin Resource Center (WRC), appeals from a trial court order granting the State's motion for relief from the court's previous order granting Williams's petition for supervised release. Williams argues that the provisions of WIS. STAT. §§ 806.07 and 805.15 (1999–2000)[1] regarding newly discovered evidence do not apply to the unambiguous mandates of WIS. STAT. § 980.08(4); consequently, he should have been released once supervised release had been granted. In the alternative, Williams argues that the WIS. STAT. § 980.07

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

periodic doctor's report does not constitute newly discovered evidence under §§ 806.07(1)(b) and 805.15(3). While we decline to address Williams's former argument, we agree with his latter contention.[2]

## FACTS

¶ 2. On October 6, 1999, Williams petitioned the trial court for supervised release pursuant to WIS. STAT. § 980.08. On October 12, 1999, Dr. Diane Lytton, a private practice physician, was appointed by the court to conduct an evaluation of Williams for the supervised release hearing. Lytton completed her report on January 18, 2000, and filed her report with the trial court on January 24, 2000. In her report, Lytton was unable to offer an opinion as to whether Williams continued to meet the criteria for inpatient commitment. There is no evidence that the State asked for another doctor's evaluation after receiving Lytton's report.

¶ 3. A supervised release hearing took place on March 24, 2000, more than two months after Lytton's report was completed. The State called one witness, Lytton. Lytton testified that Williams suffered from paraphilia[3] and an unspecified personality disorder with antisocial and narcissistic features, accompanied by polysubstance abuse. While Lytton testified that these were mental disorders that predisposed Williams to commit acts of sexual violence, she equivocated when asked if she would recommend that Williams be granted supervised release. After being asked if she herself would release Williams, Lytton responded, "I

---

[2] We need only address the dispositive issue. *Clark v. Waupaca County Bd. of Adjustment*, 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994).

[3] Paraphilia is an unspecified sexual disorder usually associated with rape.

don't know. Unfortunately I'm not the Judge." Lytton stated that the WRC was perhaps "not the best facility for [Williams] to be treated in." When specifically asked about Williams's risk of recidivism, Lytton stated, "That I'm not going to say definitely yes or no. This is one of the cases where I really, really don't know."

¶ 4. After hearing Lytton's testimony and counsel's arguments, the trial court held that the State had not met its burden in establishing by clear and convincing evidence that Williams remained a sexually violent person, substantially probable to engage in acts of sexual violence if not continued in institutional care. The trial court entered an order granting Williams's petition for supervised released on April 12, 2000. This order required the Department of Health and Family Services (DHFS) to prepare and submit a release plan by May 26, 2000, the date of the next scheduled hearing.

¶ 5. On May 23, 2000, DHFS submitted a partial release plan; this plan did not address a residence or pharmacological treatment for Williams. DHFS then requested a sixty-day extension to find Williams an appropriate residence.

¶ 6. On June 19, 2000, DHFS informed the trial court that a suitable residence had been found and a lease had been signed, but a telephone hookup necessary for electronic monitoring could not be arranged until July 5, 2000. DHFS again asked for an additional thirty-day extension to complete the telephone hookup, establish the electronic monitoring system, and hire necessary staff. Another hearing was scheduled for July 10, 2000.

¶ 7. Meanwhile, a periodic re-examination of Williams, pursuant to WIS. STAT. § 980.07, was conducted and a report dated May 29, 2000, based upon

this re-examination was issued and filed with the trial court on June 13, 2000. This report, authored by WRC staff psychologist Dr. Stephen P. Dal Cerro, differed from Lytton's report in that it indicated that Williams was at a high probability to reoffend if not in a secure setting. The State asked the trial court to reconsider its decision to grant Williams supervised release based upon Dal Cerro's report. A hearing was held on this motion on July 24, 2000. At this hearing, the State indicated that its motion was filed pursuant to WIS. STAT. § 806.07, the statute governing relief from judgment or order based upon newly discovered evidence, arguing that Dal Cerro's report constituted newly discovered evidence.

¶ 8. At the close of the hearing, the trial court indicated that despite the reconsideration label, the motion was in fact a motion for relief from judgment or order pursuant to WIS. STAT. § 806.07(1). The trial court held that the WIS. STAT. § 980.07 periodic re-examination report constituted newly discovered evidence. Based upon this newly discovered evidence, the trial court granted the State's motion for relief from the order granting Williams conditional release. Williams appeals the order granting the State's motion.

## DISCUSSION

¶ 9. The issue at hand concerns the applicability of WIS. STAT. §§ 806.07 and 805.15 to WIS. STAT. ch. 980 civil commitment proceedings. This involves the interpretation of ch. 980 and §§ 806.07 and 805.15, a question of law that we review de novo. *State v. Rachel*, 224 Wis. 2d 571, 573, 591 N.W.2d 920 (Ct. App. 1999). However, a trial court's ruling on newly discovered evidence is discretionary and will not be reversed in the

absence of an erroneous exercise of discretion. *Kocinski v. Home Ins. Co.*, 147 Wis. 2d 728, 743, 433 N.W.2d 654 (Ct. App. 1988), *aff'd*, 154 Wis. 2d 56, 452 N.W.2d 360 (1990). We will find an erroneous exercise of discretion if the record demonstrates that the trial court failed to exercise its discretion, if the trial court applied the wrong legal standard, or if the facts fail to support the trial court's decision. *Finley v. Culligan*, 201 Wis. 2d 611, 626–27, 548 N.W.2d 854 (Ct. App. 1996).

¶ 10. Williams contends that under the unambiguous provisions of WIS. STAT. § 980.08(4), once supervised release is granted he should have been released, implicitly arguing that WIS. STAT. §§ 806.07 and 805.15 are inapplicable. In the alternative, Williams argues that the periodic doctor's report does not constitute newly discovered evidence under §§ 806.07(1)(b) and 805.15(3).

¶ 11. WISCONSIN STAT. § 806.07(1) states that

> [o]n motion and upon such terms as are just, the court . . . may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
>
> . . . .
>
> (b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3)[.]

Evidence is considered newly discovered if

> (a) The evidence has come to the moving party's notice after trial; and
> (b) The moving party's failure to discover the evidence earlier did not arise from lack of diligence in seeking to discover it; and
> (c) The evidence is material and not cumulative; and

728

(d) The new evidence would probably change the result.

WIS. STAT. § 805.15(3). The standard in § 805.15(3) can be applied here even though there was not a trial. *Kocinski*, 147 Wis. 2d at 742–43. The burden of establishing the elements of § 805.15(3) to the trial court lies with the party seeking relief, here, the State. *Kocinski*, 147 Wis. 2d at 743.

¶ 12. Implicit in the filing for relief from judgment or order due to newly discovered evidence is the idea that the evidence is, in fact, new; the evidence must have come to the State's attention after the court's original order. The test is not what counsel knows or is aware of, but what his or her client is or should be aware of. *Id.* at 744. Here, Dal Cerro's report does not constitute new evidence.

¶ 13. Williams asserts that "the information contained in the periodic examination . . . did not contain new information." The State does not challenge or even address this argument, but instead argues that the report itself is new because it is dated after the March 24, 2000 hearing. Under the State's logic, if the report itself is new, the report constitutes newly discovered evidence, regardless of the content of the report. We disagree.

¶ 14. Lytton's report was completed on January 18, 2000, and submitted to the court on January 24, 2000. Her sources of information included all the information from her 1998 evaluation of Williams; interview notes from October 28 and 29, 1999 interviews with Williams; WRC records, including progress notes from May 1999 through December 1999 (with a gap between September 27, 1999, and November 16, 1999); and a suspension from treatment letter dated

September 16, 1999. Information about Williams's progress in treatment was obtained from WRC written progress reports and Williams's self-report. Dal Cerro's report is dated May 29, 2000, and was filed with the court on June 13, 2000. His sources of information included Williams's WIS. STAT. ch. 980 evaluation, Williams's ch. 980 re-examination reports, and Williams's clinical records.

¶ 15. Lytton interviewed Williams for her report, while Williams refused to be interviewed for Dal Cerro's report. At the time of Lytton's report, Williams was not participating in sex offender treatment due to a disagreement with WRC staff; at the time of Dal Cerro's report, Williams was still not enrolled in treatment because of this disagreement. Dal Cerro acknowledges that his evaluation was conducted via a review of previous records and consultations with staff. Thus, Dal Cerro's sources of information were the same as Lytton's.

■

¶ 16. There is absolutely no new information contained in the periodic re-examination report. The report is simply Dal Cerro's assessment of pre-existing information, the same information utilized by Lytton. Merely recycling and reformulating existing information into a new format does not generate new evidence. Newly discovered evidence does not include a "new appreciation of the importance of evidence previously known but not used." *State v. Fosnow,* 2001 WI App 2, ¶ 9, 240 Wis. 2d 699, 624 N.W.2d 883 (citation omitted).

¶ 17. Our holding here is supported by a recent case, *State v. Slagoski,* 2001 WI App 112, 244 Wis. 2d 49, 629 N.W.2d 50, *review denied,* 246 Wis. 2d 174, 634 N.W.2d 320 (Wis. July 18, 2001) (No. 00–1586–CR),

where we held that the existence of a postsentencing contradictory psychiatric report, based on old information, does not constitute a new factor for purposes of sentence modification. *Id.* at ¶ 11. As we stated in *Slagoski*, a contradictory report merely confirms that mental health professionals will sometimes disagree on matters of diagnosis. *Id.* The State has failed to differentiate the psychiatric evidence available at the time of Lytton's report from Dal Cerro's report. Dal Cerro's report was nothing more than the newly opined importance of existing evidence.

¶ 18.　Even if we were to stretch the definition of new evidence beyond reasonable recognition to include this new report comprised entirely of old information, it cannot be said that the State's failure to discover this "new" information did not arise from its lack of diligence. In fact, it is precisely the State's lack of diligence that prevented Dal Cerro's opinion from reaching the trial court.

¶ 19.　Lytton was appointed by the court to conduct an evaluation of Williams on October 12, 1999. Nothing in the record indicates that the State objected to Lytton's appointment. Lytton completed her report on January 18, 2000, and filed her report with the trial court on January 24, 2000. There is no evidence that the State asked for another doctor's evaluation after receiving Lytton's report.

¶ 20.　In her report, Lytton wrote:

> The Court should know that non-state employed Chapter 980 evaluators, such as this examiner, are no longer permitted to speak directly with treatment providers at WRC. This policy is unusual and one that I have never encountered before in dealing with many other institutions. Thus, information about Mr. Williams' progress was obtained only

from the WRC written progress reports and from his self-report. *The policy affects the ability of the examiner to gather information about treatment progress. In particular, the possibility exists that staff who treat Mr. Williams may have different viewpoints about his progress or about incidents that concern his treatment, but such differences may not be evident from reading summaries of his progress.* (Emphasis added.)

In essence, WRC staff refused to cooperate with Lytton's evaluation and two months later issued a decision that directly contradicted Lytton's conclusions. Perhaps Lytton's conclusions may have been different, or at least better informed, had WRC staff cooperated with her. This is especially relevant since Williams was terminated from treatment based upon an incident which he claims did not occur. Because WRC staff would not communicate with Lytton, Lytton only had Williams's version of events available to her.

¶ 21. The State and WRC staff seem to forget that at a hearing for supervised release, the burden of proof lies with them, not Williams. Williams does not have to prove that he is cured; the State must prove that Williams continues to be a sexually violent person and that it is substantially probable that he will engage in acts of sexual violence if he is not continued in institutional care. WIS. STAT. § 980.08(4). The refusal of WRC to cooperate with the independent evaluation by Lytton perhaps frustrated the State's objectives. In any event, if WRC wanted the trial court to be aware of Dal Cerro's opinion, WRC staff should have cooperated with Lytton. Again, the test to determine if evidence is newly discovered is not what counsel knows or is aware of, but what the client, here WRC, is or should be aware

of. *Kocinski*, 147 Wis. 2d at 744. At the time of Lytton's evaluation, WRC had in its possession all of the information contained in Dal Cerro's report. It cannot slide this information in the back door after it refused to contribute to Lytton's § 980.08 evaluation. WISCONSIN STAT. § 805.15(3) cannot be used as a cure for inadequate preparation. *Kocinski*, 147 Wis. 2d at 744.

## CONCLUSION

¶ 22. The facts do not support the trial court's conclusion that Dal Cerro's WIS. STAT. § 980.07 periodic doctor's report constitutes newly discovered evidence. Dal Cerro's report is not new evidence. The trial court's order granting the State's motion for relief from judgment or order is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.