COURT OF APPEALS
DECISION
DATED AND FILED

January 9, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP172-CR**

Cir. Ct. No. **2016CF15**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ZACHARY J. LARSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Pierce County: JOSEPH D. BOLES, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Zachary J. Larson appeals from a judgment convicting him, upon his guilty plea, of first-degree sexual assault of a child

(sexual contact with a person under age thirteen). Larson contends that the circuit court erroneously denied his post-sentencing motion for plea withdrawal without an evidentiary hearing. His motion alleged that refusal to allow plea withdrawal on the basis of newly discovered evidence would result in a manifest injustice. We conclude that Larson is entitled to an evidentiary hearing because his motion alleges sufficient facts that, if true, would entitle him to the relief he seeks. Accordingly, we reverse and remand to the circuit court for an evidentiary hearing.

## BACKGROUND

¶2      According to the criminal complaint, nine-year-old Lucy[1] told law enforcement that then-sixteen-year-old Larson sexually assaulted her in October 2015 when she was spending the night at his home. Lucy participated in a forensic interview in which she alleged that Larson "told [her] he wanted to 'F someone.' [Lucy] asked [Larson] what that means and he replied 'I want to put my D in someone.'" According to Lucy, Larson then "began to pull down her pants and underwear." Lucy stated that Larson attempted to insert his penis into her vagina and rectum, he "used his hands to grab and squeeze her butt and breast," and he forced Lucy to "grab ahold of his penis." Larson informed Lucy "that he was going to hurt her if she told anybody." Approximately one week later, Lucy reported the assault.

¶3      Initially, the State charged Larson—who had by then turned seventeen—with one count of first-degree sexual assault of a child (sexual contact

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use pseudonyms when referring to the victim and a witness in this case. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

with a person under age thirteen). Larson agreed to enter pleas, which involved a deferred judgment of conviction agreement (DJOC). Pursuant to the DJOC, Larson would plead guilty to the first-degree sexual assault of a child charge, but prosecution of the charge would be withheld for five years, provided that Larson complied with the agreed-upon conditions. If he successfully completed the DJOC, the State would dismiss the charge. As part of the agreement, Larson also agreed to plead guilty to an additional charge of fourth-degree sexual assault of a child in the instant case and to felony bail jumping in a separate case.

¶4      In May 2018, after a plea colloquy, the circuit court determined that Larson had knowingly, intelligently, and voluntarily entered his pleas. The court accepted Larson's plea to first-degree sexual assault, withheld judgment, and approved the terms of the DJOC. The court also accepted Larson's pleas to the fourth-degree sexual assault and felony bail jumping charges, ordered him convicted of those offenses, withheld sentence on them, and placed Larson on three years' probation, with the possibility of expungement.

¶5      Larson subsequently violated both the terms of his DJOC and the conditions of his probation. As a result, the State moved to revoke the DJOC, which the circuit court granted. Larson's probation was also revoked.

¶6      After revocation of the DJOC but prior to sentencing, Larson moved to withdraw his plea to the first-degree sexual assault charge. He alleged multiple bases for relief, including, as relevant to this appeal, newly discovered evidence. The evidence related to statements Lucy allegedly made to a family member on the night of the assault as well as statements from Lucy's mother that Lucy had accused other individuals of sexual assault and had recanted her accusation against Larson. The State opposed the motion, and the circuit court denied Larson's

motion without a hearing. The court concluded that Larson's "claim of 'newly discovered evidence' [did] not pass muster" as it was "a hearsay attack on the credibility of the 9[-]year[-]old victim by people who were not in the room where the crime was committed."

¶7    The circuit court thereafter held a sentencing hearing. The court sentenced Larson to five years' initial confinement followed by ten years' extended supervision on the first-degree sexual assault charge. Larson appeals.[2]

## DISCUSSION

¶8    As noted above, Larson alleged multiple claims for relief in his original motion before the circuit court; however, on appeal, he renews only his claim based on newly discovered evidence. Larson claims that three items of newly discovered evidence entitle him to an evidentiary hearing on his motion. For the reasons that follow, we agree as to two of those items.

¶9    Larson's claim arises in the context of plea withdrawal after the circuit court accepted and ordered the DJOC. For the purpose of a plea

---

[2] We originally decided this case on May 2, 2023. Both before the circuit court and on appeal, Larson and the State argued that Larson's claims should be reviewed under the more lenient presentence plea withdrawal standard, which permits a defendant to withdraw his or her plea for any fair and just reason that the circuit court finds credible. *See State v. Lopez*, 2014 WI 11, ¶61, 353 Wis. 2d 1, 843 N.W.2d 390. Applying this standard, we concluded that Larson was entitled to an evidentiary hearing. We therefore reversed the judgment and remanded the matter with directions.

After our decision was released, the State filed a motion for reconsideration, noting that the parties and the court had operated under the incorrect standard of review and that the proper plea withdrawal standard was the more stringent manifest injustice standard. *See State v. Daley*, 2006 WI App 81, ¶18, 292 Wis. 2d 517, 716 N.W.2d 146. We granted the State's motion, withdrew our opinion, and directed the parties to re-brief the issues on appeal under the proper standard. This modified opinion follows our reconsideration of that decision.

withdrawal motion, "acceptance and ordered implementation of the [DJOC] constitutes sentencing for purposes of determining which [plea withdrawal] standard to apply." ***State v. Daley***, 2006 WI App 81, ¶¶16, 18, 292 Wis. 2d 517, 716 N.W.2d 146. "After sentencing, a defendant who seeks to withdraw a guilty or no contest plea carries the heavy burden of establishing, by clear and convincing evidence, that withdrawal of the plea is necessary to correct a manifest injustice."[3] ***State v. McCallum***, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). "The withdrawal of a plea under the manifest injustice standard rests in the circuit court's discretion," and we will only reverse if the court failed to properly exercise its discretion. ***Id.***

¶10     Newly discovered evidence may establish a manifest injustice warranting plea withdrawal provided the defendant proves, by clear and

---

[3] Initially, we note that in his supplemental briefing, Larson argues that we should conclude that the State "waived" its argument that the manifest injustice standard should apply to his motion for plea withdrawal. As noted previously, the parties both originally argued that the more lenient "fair and just reason" plea withdrawal standard applied in this case. *See supra* note 2.

First, as the State observed and Larson conceded in reply, Larson is actually asserting that the State forfeited, rather than waived, its claim that the issue should be reviewed under the manifest injustice standard. *See* ***State v. Ndina***, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (explaining the difference between forfeiture and waiver). Second, the original error belonged to Larson, who failed to argue his motion in the circuit court under the proper standard. Thus, the State merely failed to correct Larson's error, which does not mean that the State forfeited its right to argue the correct standard on appeal, unless that failure results in Larson being prevented from alleging sufficient facts to meet the correct standard. *See* ***State v. Kiekhefer***, 212 Wis. 2d 460, 475-76, 569 N.W.2d 316 (Ct. App. 1997).

Here, while Larson suggests that he should be permitted to supplement his motion with additional facts in order to meet the heightened standard, he fails to state what additional facts he would have included if the issue had been properly raised in the circuit court or what he would address if we remanded to permit him to supplement his motion. Regardless, we are granting Larson the result he seeks—a hearing on his motion—despite application of the heightened standard; therefore, we see no need to address this issue further.

convincing evidence, that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *Id.* If the defendant establishes these four elements, then the circuit court must determine whether "a reasonable probability exists that a different result would be reached in a trial." *Id.* "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *State v. McAlister*, 2018 WI 34, ¶32, 380 Wis. 2d 684, 911 N.W.2d 77 (citation omitted).

¶11 Further, when a claim of newly discovered evidence involves a witness's recantation, the defendant must demonstrate that the recantation is corroborated by other newly discovered evidence. *McCallum*, 208 Wis. 2d at 473-74. "Therefore, corroboration requires newly discovered evidence that '(1) there is a feasible motive for the initial false statement; and, (2) there are circumstantial guarantees of the trustworthiness of the recantation.'" *McAlister*, 380 Wis. 2d 684, ¶33 (citation omitted).

¶12 In this case, the circuit court denied Larson's motion for plea withdrawal without an evidentiary hearing. Accordingly, "[w]e are guided by a mixed standard of appellate review." *See State v. Ruffin*, 2022 WI 34, ¶26, 401 Wis. 2d 619, 974 N.W.2d 432. A circuit court is required to hold an evidentiary hearing on a motion only when the defendant alleges "sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶¶9, 14, 274 Wis. 2d 568, 682 N.W.2d 433. The motion must "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how" of the defendant's claims. *Id.*, ¶23. If, however, "the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or

if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.*, ¶9. When a motion is denied without an evidentiary hearing, we review de novo "whether the motion on its face alleges sufficient material and non-conclusory facts that, if true, would entitle the defendant to relief" and "[w]hether the record conclusively demonstrates that the defendant is not entitled to relief." *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608; *Ruffin*, 401 Wis. 2d 619, ¶27.

*I. Caleb's Statement*

¶13 First, Larson's motion asserted that his half-brother, Caleb, told a defense investigator that "during the day of the incident[,] [Lucy] made comments about having sex with her sister while at her father's house [and] looking at pornography with her brother." Applying the newly discovered evidence standards, Larson argues that because successor defense counsel hired an investigator who discovered this evidence, Caleb's statement was "discovered after entry of the plea" and Larson was not "negligent in seeking the evidence." Larson further asserts that the evidence was "material to an issue in the case" because Lucy's "sexual comments suggest that [her] sexual knowledge was based on exposure to sexual imagery and sexual contact with other family members, and not as a result of Larson sexually assaulting her." *See State v. Pulizzano*, 155 Wis. 2d 633, 649, 456 N.W.2d 325 (1990). Finally, he claims that the evidence was not "merely cumulative" because there was no evidence presented in the complaint that Lucy made these or similar claims at the time.

¶14 The State—in addition to arguing that Larson presented "only conclusory facts"—asserts that Caleb's statement fails to meet the test for newly discovered evidence because the information was available at the time of Larson's

plea. We agree that Larson has failed to establish that Caleb's statement was newly discovered evidence.

¶15 Larson admits that he knew prior to entering his plea that Caleb was in the house on the day of the alleged assault and that he knew Caleb and Lucy had spent time together. Thus, Larson knew that Caleb may have relevant information about the night of the assault, and that information was available to Larson prior to entering his plea. *See State v. Fosnow*, 2001 WI App 2, ¶16, 240 Wis. 2d 699, 624 N.W.2d 883 (2000) (noting that "evidence forming the basis for a possible defense of lack of criminal responsibility … existed and was available to the defendants or their counsel prior to conviction and sentencing" and that the defendant's motion proffered "'the newly discovered importance of existing evidence,' rather than newly discovered evidence" (citation omitted)).

¶16 In response, Larson argues that "[i]t does not follow that just because Larson knew [Lucy] and [Caleb] were together that day, that Larson would also know that [Lucy] would have made such a disturbing comment suggesting that she had been subjected to sexual abuse by a family member." This argument strikes us as a claim that Larson belatedly became aware of the "importance of existing evidence," rather than that the evidence was newly discovered. *See id.*; *see also State v. Vennemann*, 180 Wis. 2d 81, 98, 508 N.W.2d 404 (1993) ("Though Vennemann may have been unaware of the exact testimony each witness would give, the evidence was in existence at the time of the trial.").

¶17 To the extent Larson is suggesting that his initial defense counsel was negligent for failing to interview Caleb or obtain an investigator to interview him prior to Larson's plea, we note that Larson does not assert an ineffective

assistance of counsel claim. Further, as both the State and Larson acknowledge, "[t]he test is not what counsel knows or is aware of, but what his or her client is or should be aware of." *See State v. Williams*, 2001 WI App 155, ¶12, 246 Wis. 2d 722, 631 N.W.2d 623, *overruled on other grounds by State v. Morford*, 2004 WI 5, 268 Wis. 2d 300, 674 N.W.2d 349. Larson asserts that "any negligence by prior counsel for not causing [Caleb] to be interviewed cannot be imputed to Larson," but Larson fails to explain how *he* was not negligent in seeking the evidence that he knew was available. Accordingly, the circuit court did not err by refusing to hold an evidentiary hearing and by rejecting Larson's claim for plea withdrawal based on Caleb's statement.[4]

*II. Recantation Evidence and Other-Accusations Evidence*

¶18 The second and third items of newly discovered evidence are similar, so we will address them together. Larson's motion alleged that Lucy's mother contacted the district attorney's office in May 2019 to inform them that "[Lucy] told a friend that the sexual assault by Mr. Larson did not occur and [Lucy] wanted to see what would happen." Lucy's mother also "received both text and verbal assertions from [Lucy] that she falsely accused" Larson (recantation evidence). Further, Lucy's mother "confirmed that [Lucy] has accused four (4) other people of sexual assault, specifically the same types of accusations" made against Larson (other-accusations evidence).

---

[4] To the extent the State makes other arguments for why Caleb's statement does not satisfy the newly discovered evidence test, we do not address them. An appellate court need not address every issue raised by the parties when one issue is dispositive. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

¶19     Concerning the first four elements of the newly discovered evidence test, Larson explains that successor defense counsel learned of the recantation and other-accusations evidence from Lucy's mother one year after she had contacted the district attorney's office.  Thus, Larson claims the evidence was clearly discovered after his plea, and, as the events occurred after the plea, he was not negligent in failing to discover the evidence earlier.  As to the other-accusations evidence, Larson argues that the evidence is material because it "could suggest that [Lucy's] accusations reflect attention-seeking behavior, impeaching [Lucy's] credibility.  More importantly, [this evidence] can suggest that [Lucy] was the victim of a sexual assault, and wanted to tell someone about it, but that it was easier to blame the 16-year-old Larson than the adult perpetrator."[5]  According to Larson, the recantation evidence "is similarly material" because "a trial where the complainant tells a consistent story is much different than a trial where the complainant has given inconsistent statements."  Further, Larson states that there was nothing in the pleadings to suggest that either type of evidence would be cumulative.

¶20     The State does not significantly dispute that Larson's motion alleged sufficient facts to meet the first four requirements of the newly discovered evidence test as to the other-accusations evidence or the recantation evidence.  Instead, the State argues that Larson is not entitled to a hearing on either of these items of evidence for three reasons: (1) the other-accusations evidence and the recantation evidence are inadmissible, and the record therefore conclusively

_____

[5] In fact, Lucy was the alleged victim of another sexual assault.  In response to Larson's motion, the State included a copy of a Minnesota criminal complaint, which stated that Lucy's mother's fiancé had sexually assaulted Lucy when she was also nine or ten years old.

10

demonstrates that the evidence cannot reasonably lead to a different result at a trial; (2) "Larson's motion fell short of alleging sufficient material facts to demonstrate how either the other[-]accusations evidence or the recantation evidence would lead to a reasonable probability of a different result"; and (3) Larson's "motion failed to plead sufficient material facts demonstrating that the recantation evidence is sufficiently corroborated."

¶21 First, as to the admissibility of the other-accusations evidence, the State argues that the evidence is inadmissible under the rape shield law, *see* WIS. STAT. § 972.11(2)(b), and because it is inadmissible, there is "no way it could have an impact on a jury's evaluation of the other evidence." "Wisconsin's rape shield law, [§] 972.11, generally prohibits the introduction of any evidence of the complainant's prior sexual conduct 'regardless of the purpose.'" *State v. Ringer*, 2010 WI 69, ¶25, 326 Wis. 2d 351, 785 N.W.2d 448 (citation omitted). According to the State, citing *State v. Mulhern*, 2022 WI 42, ¶33, 402 Wis. 2d 64, 975 N.W.2d 209, the claim that Lucy has accused others of sexual assault "clearly falls under the definition of sexual conduct, even though the conduct was unwilling." *See also Pulizzano*, 155 Wis. 2d at 643. The State further claims that none of the exceptions to the rape shield law apply. *See* § 972.11(2)(b)1.-3.; *Pulizzano*, 155 Wis. 2d at 647-52; *see also State v. Dunlap*, 2002 WI 19, ¶¶16-21, 250 Wis. 2d 466, 640 N.W.2d 112.

¶22 We disagree with the State's assertion that Larson's motion was properly denied because the evidence would be inadmissible. Our supreme court has previously explained that "a movant need not demonstrate the admissibility of the facts asserted in the postconviction motion, but rather must show sufficient objective material factual assertions that, if true, would warrant the movant to relief." *State v. Love*, 2005 WI 116, ¶¶36, 50, 284 Wis. 2d 111, 700 N.W.2d 62.

Thus, Larson was not required to "demonstrate theories of admissibility for every factual assertion" he made in his motion. *See id.*, ¶36. Further, as Larson notes, admissibility of evidence under the circumstances presented in this case "is a highly fact-specific inquiry that requires a balancing of many interests." *See Pulizzano*, 155 Wis. 2d at 648-55; *see also State v. Harris*, 2004 WI 64, ¶¶24-39, 272 Wis. 2d 80, 680 N.W.2d 737 (holding that the defendant was not required to show that improperly withheld discovery was admissible under the rape shield law and that "the prosecutor here should have disclosed the evidence and let the circuit court determine its admissibility"). We agree with Larson that "it is at the evidentiary hearing that details and theories of admissibility are addressed."

¶23 In its supplemental brief, the State counters our discussion here by arguing that the question "is not whether Larson was required to pre-prove the admissibility of the evidence in his motion; instead, the question is whether the record conclusively demonstrates that Larson is not entitled to relief *regardless* of the sufficiency of his motion." *See Ruffin*, 401 Wis. 2d 619, ¶35 ("[I]f the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing."). Larson, for his part, asserts that "[r]egardless of whether the State's distinction has merit, it fails because its underlying premise—that the rape shield statute … absolutely would bar the other[-]accusation[s] evidence—is simply not true." According to Larson, the *Pulizzano* exception "is very much 'relevant here,'" but "this [is] not the stage for determining whether *Pulizzano* applies."

¶24 We agree that the admissibility of the other-accusations evidence is not so clear that we are able to make a determination absent any factual record. The State cites *Ruffin* in support of its position that the record conclusively

demonstrates that Larson is not entitled to relief. In ***Ruffin***, the defendant filed a postconviction motion arguing that his counsel was ineffective for withdrawing a request for a self-defense instruction during his domestic abuse trial. ***Ruffin***, 401 Wis. 2d 619, ¶¶6, 19. Our supreme court determined that, under the facts in the case, "no reasonable jury would find that Ruffin acted in self-defense." *Id.*, ¶42. Therefore, counsel was not ineffective for withdrawing a request for a self-defense instruction, and Ruffin was not entitled to an evidentiary hearing. *Id.*, ¶¶42-48.

¶25 Significantly, in ***Ruffin***, a trial had already occurred before Ruffin filed his postconviction motion; therefore, the appellate courts had a robust factual record from which to determine whether Ruffin was entitled to a self-defense instruction. Here, we have no such record. The State also cites ***Mulhern*** for support, but that case involved whether the rape shield law prohibits "evidence concerning the victim's lack of sexual intercourse," which is not at issue here. *See **Mulhern***, 402 Wis. 2d 64, ¶2.

¶26 Thus, we are not persuaded by the State's claim that there is no reasonable probability of a different result at a trial because a jury would not have heard the allegedly inadmissible other-accusations evidence. The evidence Larson seeks to present *could* be admissible, depending upon what is presented and how it is presented at a hearing. Absent a developed record on this issue, we do not believe that Larson should be denied a hearing on that basis.[6]

---

[6] We stress, however, that our conclusion here is not a directive to the circuit court to ignore the proper legal standards and to declare the other-accusations evidence admissible. We simply conclude that Larson should have the opportunity for an evidentiary hearing on his motion.

¶27 As to the recantation evidence, the State argues that the evidence is inadmissible as hearsay. *See* WIS. STAT. § 908.01(1)-(3) (defining hearsay). Essentially, the State claims, the recantation evidence is not in fact a recantation because Lucy "has never recanted. All Larson has is [Lucy's] mother's hearsay account that [Lucy] allegedly recanted."

¶28 On that point, we again disagree with the State for the same reason we presented as to the other-accusations evidence. Larson was not provided an opportunity to call Lucy to testify at an evidentiary hearing where (depending on her testimony) the circuit court could have considered her credibility and other bases for the admissibility of her alleged recantation. The court essentially agreed with the State, noting in its written decision that "[t]here [are] no sworn statements that would in any way support a claim that the victim recanted." However, Larson was not required to submit affidavits in support of his plea withdrawal motion; he needed only to allege sufficient facts that, if true, would entitle him to relief. *See Allen*, 274 Wis. 2d 568, ¶9; *State v. Brown*, 2006 WI 100, ¶62, 293 Wis. 2d 594, 716 N.W.2d 906. Thus, the other-accusations evidence and the recantation evidence do not fail the newly discovered evidence test simply because there are questions regarding the potential admissibility of that evidence.

¶29 Next, the State argues that even absent the admissibility concerns, Larson failed to allege sufficient material facts that demonstrate how either the other-accusations evidence or the recantation evidence would lead to a reasonable probability of a different result at a trial. According to the State, the motion "does not explain how a jury would have a reasonable doubt as to Larson's guilt looking at both Lucy's original accusation and the alleged accusations against others." *See McAlister*, 380 Wis. 2d 684, ¶32.

¶30 While the State admits that Larson's motion discusses concerns regarding Lucy's credibility, the State claims that the "motion does not support that assertion with material facts such as what the other accusations were, who Lucy accused, when she accused them, whether they were untruthful accusations, or how those accusations would overcome the other evidence such as Lucy's forensic interview." As to the recantation evidence, the State again argues that Lucy has never recanted; that Larson is relying on Lucy's mother's hearsay allegation; and that Larson "does not explain how a jury, comparing Lucy's accusations and her forensic interview with Lucy's mother's unreliable and uncorroborated hearsay allegations against Lucy, would have a reasonable doubt as to [Larson's] guilt."

¶31 We conclude that there is a reasonable probability that a jury would have reasonable doubt as to Larson's guilt if it heard information regarding Lucy's alleged recantation and the other-accusations evidence. Larson admits that "[b]ecause the parties litigated the case under the fair and just standard, [his] motion does not provide as many details about the entire evidentiary picture as it would if it were litigated under the manifest injustice standard." However, we agree with Larson's assertion that his motion addressed the strength of the State's case, insomuch as there was no physical evidence of Lucy's sexual assault, there were no other witnesses to the assault identified in the complaint, the complaint did not detail any incriminating statements made by Larson, and Lucy's forensic interview was the only direct evidence of the assault. Under these circumstances, and given our standard of review, evidence that calls into question the veracity of

15

Lucy's forensic interview, provides a motive[7] for Lucy to make a false claim against Larson, or explains Lucy's knowledge about sex or sexual assault apart from her claim against Larson could certainly impact a jury's finding as to reasonable doubt. Larson's motion was not deficiently pled on this issue.

¶32 Finally, the State argues that Larson failed to plead sufficient material facts to demonstrate how Lucy's alleged recantation meets the corroboration requirement. As noted above, a claim of newly discovered evidence based on a recantation—in addition to the previously discussed requirements—requires corroboration of the recantation with additional newly discovered evidence because "[r]ecantations are inherently unreliable." *See* **McAlister**, 380 Wis. 2d 684, ¶33 (alteration in original; citation omitted). "Therefore, corroboration requires newly discovered evidence that '(1) there is a feasible motive for the initial false statement; and, (2) there are circumstantial guarantees of the trustworthiness of the recantation.'" *Id.* (citation omitted).

¶33 In support of the "motive" prong, Larson provided both statements addressing explicit motives as well as statements by which we can reasonably infer other possible motives. For example, Larson's motion explained that, according to Lucy's mother, Lucy's

> father is manipulating [Lucy and] threatening her with violence if she reveals the truth in an effort to control [Lucy] and keep physical custody of her. [Lucy] further claimed to [her mother] that "[two other individuals] raped her" in a text, making no mention of Mr. Larson. The text further went on to explain she only said those things to try make [Lucy's] mother's side of the family treat her better.

---

[7] We discuss Lucy's purported motives for her allegation against Larson in further detail below. *See infra* ¶33.

Further, Larson argues that the other-accusations evidence suggests other implicit motives for Lucy to fabricate her initial accusation against Larson: "One is that [Lucy] is prone to attention[-]seeking behavior. Another is that while she was a victim of a sexual assault, at her young age she found it easier to accuse Larson than an adult."

¶34 In response, the State contends that "Larson's motion does not explain how the alleged [explicit] motives (that did not come *from Lucy*) are feasible motives for her to have falsely accused Larson."[8] We consider the State's argument conclusory and underdeveloped, as the State does not explain why the explicit motives are not feasible. We nevertheless agree with Larson that the feasibility of these motives—both the explicit and the implicit motives—are either reasonably supported by the factual allegations in the motion or "reasonable inferences based on the factual allegations in the motion," especially given the relatively large number of accusations Lucy is alleged to have made against other individuals and the fact that Lucy was actually subject to another sexual assault purportedly around the same time. *See supra* note 5. Thus, Larson's motion included newly discovered underlying facts supporting feasible motives for Lucy's alleged initial false statement.

¶35 As to circumstantial guarantees of trustworthiness, the State claims that Larson's motion does not provide facts addressing this prong. The considerations relevant to the trustworthiness requirement are found within the

---

[8] The State does not address the alleged implicit motives—that Lucy is prone to attention-seeking behavior and that she found it easier to accuse Larson than an adult—in its supplemental brief, stating only that these motives were not specifically included in Larson's motion.

recantation itself: whether it is internally consistent, consistent with circumstances existing at the time of the original allegations, and indicative of knowledge of the legal consequences resulting from a false accusation. *McCallum*, 208 Wis. 2d at 478.

¶36 Given that an evidentiary hearing was not held, Larson appropriately argues on appeal that "[w]hether there are 'circumstantial guarantees of the trustworthiness of the recantation' will depend on how the recantation is entered into evidence." In response, the State asserts that "[t]he evidentiary hearing is not a fishing expedition to discover [a manifest injustice]; it is a forum to prove [the manifest injustice]." *See State v. Balliette*, 2011 WI 79, ¶68, 336 Wis. 2d 358, 805 N.W.2d 334.

¶37 While the issue of trustworthiness presents a close case, we believe that the recantation evidence and the other-accusations evidence are interrelated in such a way that because we are granting an evidentiary hearing on one issue, it is appropriate to do so on both. Typically, we would expect a defendant to plead more circumstantial guarantees of trustworthiness than have been presented here. Nevertheless, we do agree with Larson that his motion alleges that Lucy *repeatedly* recanted to her mother—"a trusted figure" and not "a one-off comment to a stranger"—both in conversation and via text message, and the motion provided a plausible reason for her alleged recantation, given the timing of her Minnesota sexual assault claim and the fact that Lucy's parents were apparently engaged in a custody battle. These circumstantial guarantees of trustworthiness are sufficient to entitle Larson to an evidentiary hearing.

¶38 In reviewing Larson's motion, we conclude that he sufficiently pled his claim of newly discovered evidence related to Lucy's mother's statements—

both with regard to the other-accusations evidence and the recantation evidence. *See Allen*, 274 Wis. 2d 568, ¶23 (motion must specifically allege who, what, where, when, why, and how). It is clear from the circuit court's decision that it did not consider the assertions in Larson's motion to be credible or admissible. However, given that Larson's motion alleged sufficient material facts that, *if true*, would entitle him to relief, the proper procedure is to hold a hearing to resolve these evidentiary and credibility issues. *See id.*, ¶12 n.6; *see also State v. Leitner*, 2001 WI App 172, ¶34, 247 Wis. 2d 195, 633 N.W.2d 207 ("When facts are in dispute and credibility is an issue, live testimony is generally preferable.").

¶39 Given our standard of review, the fact that we must assume the alleged facts to be true, the preference that a hearing be granted under the circumstances, and the nature and extent of Larson's claims, we conclude that the circuit court erred in denying Larson an evidentiary hearing on his motion for plea withdrawal as it relates to the other-accusations and recantation evidence. While we take no position at this time on whether Larson's motion for plea withdrawal should ultimately be granted, we see nothing in the record before us on appeal that conclusively demonstrates that Larson is not entitled to the relief he seeks. Therefore, we reverse Larson's judgment of conviction and remand to the circuit court for an evidentiary hearing on his motion for plea withdrawal related to the other-accusations evidence and the recantation evidence.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.